The first case on our calendar is No. 21-1028, Delta Air Lines v. Bombardier. And we're set to begin. Mr. Zeitlin, I guess. Please let me know if I pronounce your name right. That's correct, Your Honor. Thank you so much. Very glad to be with you. Misha Zeitlin for Delta. Thank you. Under the district court's contractual interpretation here, Delta and Airbus Canada, the only two parties to CCO3, agreed to give a windfall to third-party Bombardier for no consideration by relieving Bombardier from all of its obligations under the purchase agreement, including the obligation to honor goods and services credits. Mr. Zeitlin, can you tell me what specific language in the Bombardier Delta contract you're relying on with regard to the past practice of the credits? With regard to the past practice of the credits, the language that – I'm talking in terms of page now and reference, not just a general description. I want a specific page paragraph that you're relying on. Right, Your Honor. So the obligation to honor the credits is found at JA237. Okay, thank you. And that says that whenever an aircraft is delivered, credits are given to Delta towards the purchase of goods and services, excluding aircraft purchased directly from Bombardier, and so that is the contractual language. So there is no limitation there that says that the goods and services can only be cashed in for C-series goods and services. Okay. Now, Your Honor, that goes to the second argument that my friends made before the district court, whether we could ever cash in these credits for CRJ goods and services. They haven't really defended that argument on appeal. Their entire appeal, defense of this appeal as far as I can tell, is that even though they had the obligation to honor the goods and services credits, including for CRJ goods and services, until December 2018. Well, if that was the case, if that was your clear understanding of what that language meant, when Airbus bought out Bombardier's interest in the C-series plane, why didn't that arrangement exclude or have some kind of exclusionary language with regard to your interest in seeking credits from Bombardier? Your Honor, the language remained the same before and after the purchase. When Airbus bought out Bombardier, you agreed to it, right? You had to consent to it, right? Your Honor, there are multiple transactions. Didn't the contract require your consent? Yes, that happened in 2016. And you consented to it. But at that time, then, you obviously must have recognized that Airbus was now going to be building the planes, the new planes, the new lines. Airbus was going to be moving forward. Bombardier was no longer having anything to do with this series of planes. And yet, you say you clearly had an understanding that you were going to be getting credits from Bombardier, was no longer a party to this contract with regard to older planes that you had bought for them. It seems totally odd to me that for some reason, A, you didn't have Bombardier in there, or B, that you didn't mention it. Well, Your Honor, just with all respect, that transaction occurred in 2016. They're relying upon a contractual change order that occurred in December 2018. Why don't you answer my question? The answer to your question is that within that— Stop for a second. Sorry. You have to wait and hear what the question is. Sorry, Your Honor. Tell me what the answer is. It's impolite to talk over people. Okay? All right. Thank you very much. So now tell me again, why is it that Bombardier didn't have—or why is it that Delta didn't have some concern about identifying Bombardier's continuing obligations once Bombardier is removed from the contract? Your Honor, if I may, as part of that transaction, we entered into an assignment agreement, which had three parties to it. It had Bombardier. It had CSAP. It had Delta. And that assignment agreement, in the clearest, most unambiguous, comprehensive terms, said that that assignment did not undermine our rights in any extent. And that includes the rights under the letter agreements to cash in the credits for CRJ goods and services. We could not have been clearer in that contract in 2016 that all of our rights were protected and not a single right that we lose—that we would lose as a result of that transaction, which is why— I apologize, Your Honor. No, no, no. I said okay. I'm listening to you. Right, which is why, Your Honor, my friends don't rely upon the 2016 transaction at all in their argument. In fact, their entirety of the argument is based on CCO3, which happened more than two years later in December 2018. Right. And their— That's what I—if you'll forgive me, I'll just ask one more, two more questions. Forgive me, Madam Presiding. Please go ahead, Judge Wesley. The CCO3 is an interesting document. You saw fit in CCO3 to make sure that you excluded Section 19.7 from the definition of buyer, right, or seller, right? That's correct, Your Honor. Why didn't you—it would seem to me that if this was such an important thing to you. What I don't understand is why you didn't make a similar exclusion with regard to the past practice of bombardiers issuing credits to you and taking credits from you or giving you credits with regard to prior airplanes and training and equipment, et cetera. You had the perfect opportunity to make it crystal clear that bombardiers' obligations there remained the same. Why didn't you do that? We didn't, Your Honor, because we thought that the language in the agreement was sufficient. Now, with regard to that carve-out, Your Honor, the reason that carve-out is there I think is pretty plain. The entire point of 19.7 is a transaction from bombardier to CSALP. There's no reason, which happened in 2016. There's no reason to deem anything with regard to bombardier and CSALP with regard to 19.7. Bombardier is getting out of the sea line business. I mean, in steps, it's moving away from building airplanes. First of all, it gets money from Quebec, and it's still having trouble, and it's hoping that the Delta contract is going to help it. Delta stays in. I get that. And then Airbus gets interested, and then Airbus gets real interested, and now Airbus owns it, and then ultimately Mitsubishi owns all the other rights. But at some point in time, one would have thought if you were going to continue to look at bombardier, you would have made it clear that bombardier still has to do this. I don't understand why you did. Your Honor, if I may take a step back for a second. We're at the motion to dismiss stage. Your Honor is certainly raising some considerations that could go into the business rationality between the parties. But here the only real question is if the contract, this language deemed to be a reference to, means always and without exception shall be replaced with. Now, I was hoping this morning to talk a little bit about why that language is ambiguous, why it could be subject to multiple meanings, and why all we're asking for here is a modest thing… There's a vacature of the discourse decision, and a remand… Sorry, Your Honor. Judge Wesley's asked a lot of questions, and that's fine. I'm glad he's pursued it, all those questions. But you're running out of time, and you haven't gotten to your main argument. And that's the problem. That's the problem with this argument right now. I would like to have you answer the question that you just posed as to why you believe that CCO3, the deemed to language, is ambiguous. Please take a couple of minutes and respond. Yes, Your Honor. I think that follows from both the language and the context of CCO3. The language here in dispute is deemed to be a reference to. My friends have not cited a single source, case, hornbook that suggests that deemed to be a reference to always or generally means replaced with. And we did give a hypothetical in our papers that I think shows that it is quite possible and, in fact, sometimes the most logical way to understand this language in the way that we say. Excuse me, Mr. Stiglitz. You didn't cite any authority for your hypothetical either. I mean there's no case that holds in the circumstances of an intervention and a preliminary injunction that you referred to that a court will interpret deemed to refer to as referring to only one party or referring to two parties. Without an also, it seems to me that the interpretation offered by your colleagues on the other side is the only reasonable one. Deemed to be a reference to means is replaced by is or otherwise considered to be X. You make the argument that it would have been easier for the parties to use replaced by if they meant replaced by, but the same argument could be made that if you meant also considers – refers to another party, that the word also would have been used, and yet it wasn't. Right, Your Honor, and the way that you just stated that is exactly correct, which is that if it had said replaced with, they would be clearly correct unambiguously. If it said also, we would be unambiguously correct because neither replaced or also is used. This language is ambiguous, and I think my hypothesis – I don't think that establishes that deemed to be a reference to is ambiguous. I think in the ordinary usage and the dictionary usages that your colleagues have pointed to in the district court relied on, the only reasonable interpretation is that it means, and it's deemed to be a reference to, the substitute party. Your Honor, I think the reason that the hypothetical refutes that only reasonable statement that you just made, Your Honor, is I think that if I articulated that order to Your Honors, I think that everyone would understand that in that circumstance, deemed to be a reference to is not intended and does not mean replaced with. If I could articulate the hypothetical, what occurred in the hypothetical is that a plaintiff goes to a court and says… Well, let me just point out again that you also are not pointing to any instance in which a court has interpreted that language in the hypothetical situation that you posit, right? We might think that that is a misuse of the word deemed to be replaced to. That is fair, Your Honor. So when neither side has cited a definitive case, I think Your Honors, all Your Honors can do is resort to the ordinary uses of the English language. And I would respectfully submit that if that kind of order came before the court and the state plaintiff attempted to – state defendant attempted to enforce the original statute against the original plaintiff saying, well, look. The court said deemed to be a reference to, and that means that the injunction only protects the intervener. I think the district court and this court would have no problem rejecting that kind of argument, or at minimum, Your Honors or the district court would find that to be ambiguous. I would be very surprised. In fact, I think it's unthinkable to think that this court or hypothetical district court would, in that hypothetical circumstance, say that it's clear that the plaintiff was no longer protected by the original injunction. Judge Walker, did you have anything else before we remit Mr. Zaitlin to his rebuttal time? That's fine. We can do that. I just wanted to understand a little bit more about how deemed to be a replacement to, deemed to be a reference to could be ambiguous. And given the questions that have been asked, I think I understand the position of the appellant here. I'm perhaps less – I'm less convinced that it's not ambiguous than perhaps some of these questions might lead to. Because it does seem to me that you can have a deeming which also preserves the original party. But in any event, I think we're fair enough overall. Very good. Then Mr. Zaitlin, you have reserved two minutes for rebuttal. We'll hear you again soon. Thank you very much. We'll hear from Ms. Lefevre, please. Thank you. May it please the court. Anne Lefevre for Defendant Appellee Bombardier, Inc. I want to jump right to the only textual argument that Delta asserts in connection with interpretation of the operative version of the agreement, which is the amended agreement under CC03. Delta tries to create this ambiguity, an impression of ambiguity, by saying the word deemed is susceptible to multiple interpretations. It's hypothetically possible that the word deemed can mean that it's a reference to both the original thing and some secondary thing. And therefore, it's possible that CC03 means that references to Bombardier now mean references to Bombardier and Seller. This is not an interpretation of the word deemed that can be reconciled with the plain and unambiguous language of CC03. CC03 does not say references to Bombardier are deemed references to Bombardier and Seller. It says references to Bombardier are deemed references to Seller. Full stop, period. So the strained interpretation of the word deemed that Delta tries to assert just cannot be reconciled with the context of plain language of CC03. You would agree, however, that, well, let me before I ask you that question, can you tell me when the purchase agreement provided for the rights in goods and services to be part of each deal, what was the effect of that on the price? In other words, was the price higher than it would have been otherwise if those goods and services were not included? It was effectively a discount off the purchase price for the same value, for the value of the credits. Well, it's a discount, but by the same token, the price itself encompasses both because the goods and services are to be provided at no further cost, right? Correct. Yeah. So one would say that the purchase price, I mean, it's like going to a store and saying, you know, your first bottle of pills is X, you get the second one for half price. Basically, you get two pills for the total price and two bottles of pills for the total price. And here you're getting goods and services plus the aircraft for a given price. And that would have been your obligation had CC03 never come into the picture. And they argued still your obligation. Why isn't this just a plain windfall to Bombardier when the different class of aircrafts are being purchased? Bombardier's position is that there was no windfall here for Bombardier because those credits were only ever applicable to the C series. That wasn't the history of the transactions, right? The transactions over time where they were allowed to have the goods and the credits for different planes. It wouldn't have to be the same plane. Unless you're saying that they were always tied to the same plane that the purchase agreement covered in that particular purchase. I believe your honor is referencing the course of dealing argument that Delta makes. Certainly, I'm happy to address that. The course of dealing that Delta alleges that argument does not help them. And they spend a great deal of time on it in their briefing. You're saying it doesn't help them because, in effect, the contract is unambiguous. But my question is, why would they ever agree to not have Bombardier continue on with the arrangement that existed? Why would they want to give this windfall away to Bombardier? I don't understand that. Just in terms of the logic of the transaction. Certainly. The course of dealing that Delta alleges where the credits could be applied to different models of aircraft. The only allegations on course of dealing were the application of credits from one model of CRJ to a different model of CRJ, say the 200 to the 900, all within the same line of aircraft. There are no allegations about a course of dealing that shows the applicability of credits from one model, one platform to a totally different platform. Credits arising or giving discounts off a purchase price makes sense for a seller when the seller is selling both products. But the seller is no longer selling both products. Airbus was selling the product forward, and Bombardier had sold the product, the earlier ones, against which now Delta seeks credits. It seems logical that if Bombardier had been selling all these series of planes and they wanted to adjust because they had concerns about earlier planes or pilot training and other things, that's not a big deal. But once the seller is no longer Bombardier, the credit is hard to give. It's hard for Airbus to honor or someone to honor a credit coming off of a purchase of a brand new plane with regard to a plane that's been in service for 20 years, right? The credits were never applicable to the early. I know that's your position, but if you take their course of dealing argument, it's hard to understand how someone who's no longer making the newer planes for which credits would arise as discounts off a purchase price. That's how you describe it, correct? Yes. And then apply it to earlier planes. Airbus isn't servicing those earlier planes, is it? It is not. Airbus does not. All right. All right. So let me ask you one more question, then I'll leave you alone. Who are the parties to CCO-3? CECEL, now Airbus Canada, and Delta. Was Bombardier? No, Bombardier is not a party to CCO-3. How does one introduce that ambiguity, or how does that then create an ambiguity as to the Delta-Bombardier contract? How does a contract or language to which one party never signed introduce an ambiguity to an earlier agreement between two parties signatory to an agreement? What New York case stands for that proposition? To clarify, Bombardier does not think that there is any ambiguity in the original agreement. I understand your answer, but now answer my question. Is there any case law, Delta's position as I understand it, is that CCO-3 creates an ambiguity in the Delta-Bombardier agreement, correct? And therefore, a course of dealing should be allowed to understand the Delta-Bombardier agreement, correct? That is Delta's position, correct. And what case in New York says that a contract executed between one party to a contract to a third party is allowed to introduce an ambiguity into a contract between the two parties to the litigation? I'm not aware of... I know of none. I'm not aware of any case law that allows Delta to introduce the ambiguity that's purporting to do, to introduce here. All right, thank you. I'll move now, Delta, I just want to clarify a point that Delta made in their opening remarks, which is that Bombardier doesn't cite a single authority for its interpretation of the word deemed. That is incorrect. Bombardier relies upon the dictionary definition from Black's Law, which Bombardier believes is a fairly reliable source when it comes to interpretation of contracts. And I would point out, as the bench already has done, that Delta itself does not cite a single authority to interpret, to support its interpretation of the word deemed. The one authority, the single authority in which they rely, also cites the Black's Law dictionary and is exactly consistent with Bombardier's interpretation here. Could you read that? Could you just tell me what that definition is? Absolutely. I believe I have it. Black's Law dictionary is to treat, deem, is to treat something as if, one, it were really something else, or two, it has qualities that it does not have. Is that right? That's correct. And the district court correctly found that there is no construction of the word deemed that can mean what Delta purports that it means here. That's also, I see I'm almost at the end of my time, so I quickly want to address, if your owners have no further questions, the leave to amend, which we believe the district court also correctly denied. The reason being that the words on the page of CCO3, the operative agreement, are crystal clear. And there's nothing that Delta can allege further, particularly given that it's already had two opportunities to do so, to get around that plain language of the contract. And so the allegations that Delta proposes to add about economic context, further course of dealing, simply are legally irrelevant, and there's no basis for leave to amend here either. Thank you. Thank you for your argument. Mr. Zaitlin, you have two minutes of rebuttal. Thank you, Your Honor. A couple of quick points. First, not a single word in Black's Law dictionary says deemed means replaced, so that dictionary definition does not settle this argument. But, Mr. Zaitlin, it doesn't have to say deemed means replaced in order to rebut your claim. It's just to treat something as something else. I think it can affect a replacement. Sorry, Your Honor. I think that the only way that we could lose at the motion to dismiss stage is if your honors conclude that the word, the phrase deemed to be a reference to always without any exception means shall be replaced with. Let me ask you one other question then. In the contract change order number three, can't we also take meaning from the fact that the provision says, provided that any and all references in this agreement, other than those in section 19-7, the bombardier shall be deemed a reference to seller. That's a very specific carve out, which suggests that bombardier does not survive in the remaining references, which it says shall be the CESALP, and suggests even more precisely that deemed means only the seller and not bombardier. Isn't that right? With respect to that, it's not at all right, Your Honor. The meaning of the carve out, which I explained to Judge Wesley earlier, doesn't elucidate at all whether deemed to be a reference to means shall be replaced with. For example, in my hypothetical that I gave, Your Honors, in the briefing in here, if you alter the hypothetical to say the district court said all references to the plaintiff and the injunction shall be deemed to be a reference to the intervener, except where we talk about the history of the lawsuit. I think the meaning of what the district court said would be plain, which is that deemed to be a reference to, in that circumstance, functions, as Judge Walker said, to be additive. Now, I understand that there is an intuition, perhaps a strong intuition, that deemed to be a reference to generally means replace. While I disagree with that intuition, again, Your Honors, we're at the motion to dismiss stage. If after taking all of the evidence the district judge still determines that that is correct, then we can lose at the summary judgment stage or after trial. But in this very, very early posture, because it is linguistically possible, in fact, in some circumstances, far more likely to use deemed to be a reference to the way we say rather than they say, we ask modestly that this court simply send this case back to the district court, allow us to develop evidence, and this case may come back to this court on a later posture. All right, thank you very much. We have here arguments with reserved decision. Thank you.